SPARKS *v.* ANDERSON *et al.*

(Division B. March 27, 1933.)

[146 So. 867. No. 30497.]

John A. Sykes, of Jackson, and Gex & Gex, of Bay St. Louis, for appellant.

Chas. R. Haydon and Gardner & Backstrom, all of Gulf-port, for appellees.

446

Argued orally by **W. J. Gex**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

W. G. Sparks filed a bill in the chancery court of Harrison county to enforce a vendor's lien upon certain lands therein described, and to collect two notes executed by V. A. and T. O. Anderson, payable to L. L. Chevally and Thomas Fursden, or bearer, making as defendants there-

to, the said V. A. and T. O. Anderson; Mrs. E. D. Smith and P. R. Perkins, residents of Harrison county; Mrs. Pearl E. Porter, a resident of Jackson county; and Cecil D. Moore, a resident of Washington county; and alleging that on the 23d day of June, 1925, two notes for two thousand one hundred fifty dollars each, due respectively one year after date, and two years after date, bearing interest at the rate of six per cent. from date, were executed by the Andersons payable as stated, and that said notes provide for fifteen per cent. attorney fees in case they should be placed in the hands of an attorney for collection. He alleges in said bill that said notes were secured by a vendor's lien upon the property described in the bill, and that each of the defendants were individually, jointly, and severally liable to him for the full amount of said notes, less whatever proceeds he realized from the foreclosure of the vendor's lien; that the notes were for part of the purchase price of the lands sold by Chevally and Fursden to the said Andersons, and that the lien was reserved to secure the notes. Copies of the notes were filed as exhibits to the bill. He further alleged that V. A. and T. O. Anderson sold and conveyed the land described to Mrs. Pearl E. Porter, who assumed and agreed to pay the notes as part of the purchase price, and a copy of the deed to her is also filed as an exhibit to the bill; that Mrs. Porter thereafter conveyed said land to Mrs. E. D. Smith, Cecil D. Moore, and P. R. Perkins, they assuming to pay said notes as a part of the consideration for said conveyance, and a copy of the deed to them being filed as an exhibit to the bill; and that said last-named grantees sold and conveyed said land to Dr. Samuel C. James, and that, as a part of the consideration, he assumed to pay said notes, and a copy of his deed was filed as an exhibit to the bill also.

It was then alleged: That when the first note became due, Chevally and Fursden placed it with the First Na-

tional Bank of Gulfport for collection, demanding payment and threatening foreclosure; that Dr. James was unable to pay, and proposed to his wife, Mrs. Mary Doran James, that if she would take up said note she would stand in the shoes of Chevally and Fursden, and the vendor's lien which secured them should secure her; that Mrs. James accepted this proposal, took up said notes, and became the owner and holder thereof; that when the second note became due, Dr. James paid the interest thereon up to September 23, 1927, whereupon Chevally and Fursden extended the same for three months, at the end of which time the note was placed with the First National Bank of Gulfport for collection, and payment was demanded and foreclosure threatened. Again the said Dr. James was unable to pay the same, and procured Judge T. A. Wood to take up said note, agreeing with them that he should stand in the shoes of Chevally and Fursden, and that the vendor's lien which secured them should secure him; that Judge Wood took up said note and same was transferred and assigned to him in writing on the back of said bearer note; that thereupon Dr. James proposed to his wife that she take up said note from Judge Wood, and agreeing thereto, and in pursuance thereof, Mrs. James took up said note from Judge Wood, who transferred the same in writing to her on the back of said bearer note, and she became the holder thereof for value; that thereafter, on February 2, 1930, Dr. S. C. James died, leaving, as complainant believed, two pieces of property in Harrison county, and this being all the property of any kind owned by the said Dr. James; that both pieces of property were heavily incumbered, and that the foreclosure sales thereof did not bring enough to pay the mortgage debts thereon; that there was no will of said Dr. James ever probated in Harrison county, nor were letters of administration upon his estate taken out; that the only other property

Dr. James owned was the property upon which the vendor's lien exists. It was also alleged in the bill that at the time of Dr. James' death, Mrs. James, being indebted to the complainant, Sparks, a son-in-law of Dr. James, proposed to him that she would transfer and deliver said notes to him in satisfaction of said indebtedness; representing that the same were secured by a vendor's lien, and that if he would take said notes he should be entitled to all the rights of the original payees, Chevally and Fursden.

V. A. and T. O. Anderson filed an answer and cross-bill admitting the execution of the notes and the vendor's lien, but setting up that same had been paid; that they had sold said land to Mrs. Pearl E. Porter, and that she had assumed the payment of said notes and gave additional notes also constituting a vendor's lien upon the land, and they asked that the notes be adjudicated to have been paid and be canceled, and the prayer of the answer and cross-bill was for a judgment against Mrs. Pearl E. Porter for the amount evidenced by her notes and vendor's lien upon said land.

Mrs. Pearl E. Porter filed an answer to the original bill admitting that she had purchased said land from said V. A. and T. O. Anderson and assumed payment of the notes sued on; but she set up therein that said notes had been paid and satisfied. She admitted the execution of notes in favor of the Andersons for additional purchase price, and filed copies of her bill against the defendants, Mrs. E. R. Smith, Cecil D. Moore, and P. R. Perkins. She made her answer a cross-bill.

It appears from the pleadings and the evidence, without setting same forth in detail, that Mrs. Porter sold to Mrs. E. R. Smith, Cecil D. Moore, and P. R. Perkins, and that they, in turn, conveyed the land to Dr. Samuel James; he giving additional purchase-money notes, and assuming to pay the notes sued on; and that when the

first note became due, it was placed in the bank for collection. There is some dispute in the evidence as to what happened at that time. The bank collected the money and placed it to the credit of Chevally and Fursden, and claimed it was a collection, and that they did not have any understanding that Mrs. James was the owner and holder of the notes, or that they were selling the notes to her. Mrs. James' testimony is that they did deliver the note on the understanding that she was taking them over to become the owner thereof and to have the same security of Chevally and Fursden. The first note does not appear to have been formally assigned by any one to Mrs. James, but both of them were bearer notes, and, ordinarily, no assignment in writing is required to transfer title, as possession usually carries with it the title, unless it is otherwise understood. When the second note became due, it was also placed with the above-mentioned bank for collection, and the funds received were placed to the credit of Chevally and Fursden also, although they had, by written indorsement on the note, transferred same, without recourse, to Judge T. A. Wood, who, in turn, transferred same, without recourse, in writing, to Mrs. James. There is also a dispute between Judge Wood and Mrs. James as to what the understanding was in that transaction. Mrs. James testified that Judge Wood required her to secure the money which he had loaned to Dr. James, and it was agreed that she should take up the notes, and that they would be assigned to her, and that they were transferred to her by written indorsement, without recourse, by Judge Wood, who testified that, as he had previously loaned Dr. James money and had a deed of trust on certain property, when Dr. James approached him to secure money for the payment of these notes, they agreed to take a second deed of trust to be signed by Mrs. James, as well as Dr. James, and that this deed of trust was the only security that he con-

sidered he had received. That, after he had furnished Dr. James a check to take up the notes, he called the bank and asked them to be sure that this check was paid on the notes; that the second note was delivered to him with the indorsement of Chevally and Fursden, without recourse, but that he did not consider the note as security, understanding that it had been paid; that Dr. James asked him to transfer the note to Mrs. James, which he refused to do at first, but after considerable insistence by Dr. James, he did write a transfer on the back of the note without recourse, to Mrs. James, with a stipulation in the transfer which appears on the note, that it was not to affect his note and deed of trust against the property above mentioned, given by Dr. and Mrs. James to procure money from Judge Wood.

Mrs. James and the complainant, W. G. Sparks, both testified that she transferred the note to the complainant, Sparks, in satisfaction of a debt she owed him, and that both understood that she was the owner of said notes, and that the vendor's lien remained unimpaired to secure the payment thereof.

Mrs. Sparks, wife of the complainant, and daughter of Dr. James, deceased, testified that, prior to his death, her father told her about the transaction, and that the two notes belonged to Mrs. James, as she had paid for them with her own money.

It appears in the evidence that in 1929, prior to the death of Dr. James, V. A. Anderson wrote him a letter stating that he would extend the notes' due dates, if Mrs. James would give V. A. Anderson priority of right of liens. In this letter Anderson appears to have recognized that Mrs. James had a first lien upon the premises. He testified in the case and said that Dr. James had told him that Mrs. James held the notes which Anderson executed to Chevally and Fursden; that she had paid for them with her own money; and that his letter was writ-

ten under the impression created by this information given him by Dr. James.

The original bill did not make the heirs of Dr. James, his executor, or administrator, parties to the suit. In the answer filed by Mrs. Porter, she set up that they were necessary parties, and in her cross-bill she named numerous persons purporting to be heirs of Dr. James, who should be named parties defendant, and prayed for relief against them.

It also appears in the evidence that Mrs. James owned property in Kansas City, Missouri, and that she had some means. It does not appear in the evidence, although it was stated that it would be introduced, what disposition Dr. James made of any property he had, in so far as any written will was concerned, nor does it appear in the evidence what property, if any, his children, or any of them, received by way of an estate.

The chancellor rendered a decree dismissing the bill filed by Sparks, and ordering a cancellation of the note sued on in the original bill, and granting the relief prayed for under the cross-bills, and directing the lands to be sold so as to satisfy the notes given by Mrs. Pearl E. Porter to V. A. and T. O. Anderson, and to satisfy the claim of Mrs. Porter against Mrs. E. D. Smith, Cecil D. Moore, and P. R. Perkins; and that each party pay the amount owed by each of them, and, in default thereof, that the land be sold.

The decree appears to be a personal one against each party named for the amount assumed, and a personal judgment against the named persons, purporting to be heirs of Dr. James, for the amount assumed by him.

We think, upon the evidence in the record, the chancellor was warranted in finding that the notes given by V. A. Anderson and T. O. Anderson to Chevally and Fursden were paid and their debt to them discharged, notwithstanding the written indorsement of Chevally and

Fursden to Judge Wood, and the indorsement by him to Mrs. James. We might find differently were the case one of original jurisdiction, and we were triers of the facts.

The chancellor had the witnesses before him and was familiar with the respective parties testifying.

We think, however, that when Dr. James procured one note to be delivered to Mrs. James without being marked "paid," and the other note being transferred by a written indorsement showing such transfer to her, it had the same effect as if the notes were originally issued by Dr. James. In other words, he had made some arrangement to make her appear to be the holder of the notes, and although the notes were past due and subject to any defense which might be made against them, still Dr. James could not have defended the action after the note passed out of the ownership and custody of Mrs. James; for W. G. Sparks, having purchased a bearer note or notes, believing them to be valid instruments, was entitled to enforce his demand against the estate of Dr. James, or his representatives, and against Mrs. James.

While this claim would be subordinate to the rights of the Andersons, Mrs. Porter, Mrs. Smith, C. D. Moore, and P. R. Perkins, still, whatever balance that might remain after foreclosure would rightfully go to the complainant, W. G. Sparks. At the time of the decree, the chancellor could not see and know what amount the property would bring. He should not have dismissed the bill filed by Sparks.

We think the decree is also erroneous in so far as it undertook to render personal judgments against the heirs of Dr. James. It does not appear that any of the heirs received an estate equal to the judgment pronounced against them, and it does not appear that they, in any wise, undertook to discharge the obligation of Dr. James to certain parties from whom he purchased, and whose obligations he assumed in the purchase.

It appears from the subsequent · sale that the lands brought less than the amount of notes executed by the different parties and assumed by Dr. James, but we are unable to say what the purchase price would be if the complainant, Sparks, should bid himself, or should procure bidders.

We think, therefore, the bill should not have been dismissed, but that the chancellor should have decreed in accordance with the view herein expressed. The judgment will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.